J-S39031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                 :               PENNSYLVANIA
                                                 :

                   v.                           :
                                               :
                                               :

MELVIN DANIEL MANEVAL,         :
                                                 :
                  Appellant         :          No. 1622 MDA 2017

Appeal from the Judgment of Sentence September 13, 2017
in the Court of Common Pleas of Lycoming County,
Criminal Division at No(s):  CP-41-CR-0000815-2016

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:               **FILED AUGUST 31, 2018**

Melvin Daniel Maneval ("Maneval") appeals from the judgment of sentence entered following his guilty plea to one count of aggravated indecent assault.[1]  We vacate the judgment of sentence and remand with instructions.

On April 21, 2016, a forensic interviewer from Janet Weis Children's Hospital, Child Advocacy Center, in Sunbury, Pennsylvania, interviewed the 14-year-old victim.  At that time, the victim related that Maneval, her biological uncle and adoptive father, had sexually assaulted her from the ages of seven to eleven years old.  She told the interviewer that the abuse stopped after she confronted Maneval.  When interviewed, Maneval admitted to the incidents.

On December 2, 2016, Maneval pled guilty to one count of aggravated indecent assault, complainant less than 16 years old.  On September 12, 2017,

_____

[1] **See** 18 Pa.C.S.A. § 3125(a)(8).

after a hearing, the trial court found, by clear and convincing evidence, that Maneval met the criteria under the Sexual Offender Registration and Notification Act ("SORNA")[2] to be designated as a sexually violent predator ("SVP"). That same day, the trial court sentenced Maneval to a prison term of four to ten years. Maneval filed a post-sentence Motion, which the trial court denied. Thereafter, Maneval filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Maneval presents the following issues for our review:

I.    In light of [the Superior] Court's opinion in **Commonwealth v. Butler**, 173 A.3d 1212 [(Pa. Super. 2017)], should [the] trial court's determination in [its] Order dated September 13, 2017, that [Maneval] met the criteria to be classified as [an SVP,] be vacated as not complying with permissible constitutional mechanisms[?]

II.   Did the trial court abuse its discretion when imposing a minimum sentence of forty-eight (48) months, representing the top-end of the [aggravated] range, for [Maneval's] plea to one (1) count of [a]ggravated [i]ndecent [a]ssault[,] where [Maneval] had no prior record despite being in his sixties, and had provided several examples demonstrating his remorse and responsibility taken for his crimes[?]

Brief for Appellant at 4.

_____

[2] **See** 42 Pa.C.S.A. §§ 9799.10-9799.41.

Maneval first challenges the legality of his sentence. Brief for Appellant at 10. Maneval argues that his classification as an SVP under SORNA should be vacated in light of this Court's decision in *Butler*, which, applying the Pennsylvania Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), held that SORNA's registration requirements are punitive, and therefore, trial courts cannot apply SORNA's increased registration requirement to SVPs.[3] Brief for Appellant at 10. Maneval additionally challenges recent changes enacted by the General Assembly, addressing the SVP classification procedure, such as 42 Pa.C.S.A. § 9799.23(e)(3), which, he claims, "left in place the 'clear and convincing' language as the evidentiary burden to show [that] a defendant meets the SVP designation." Brief for Appellant at 10 (citation omitted). Maneval acknowledges that the changes enacted by the General Assembly include a means by which an SVP registrant may seek relief after 25 years. *Id.* at 11. However, Maneval argues, the registration requirements are still punitive, despite subsequent legislative attempts to fix them. *Id.* Thus, Maneval asserts that his SVP designation should be vacated. *Id.*

_____

[3] Maneval points out that the decision in *Butler* was filed one month after his sentence was imposed. Brief for Appellant at 10.

3

After the trial court sentenced Maneval, our Supreme Court in **Muniz** held that SORNA'S registration requirements constitute criminal punishment, as opposed to a mere civil penalty, and therefore, their retroactive application violates the *ex post facto* clause of the U.S. Constitution. **Muniz**, 164 A.3d at 1192. In the wake of **Muniz**, this Court concluded in **Butler** that,

> since our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi [v. New Jersey**, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)] and **Alleyne [v. United States**, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013)], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses [,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder….

**Butler**, 173 A.3d at 1217. Consequently, trial courts cannot apply SORNA's increased registration requirement to SVPs.[4] **Id.** at 1217-18. In addition, this Court further concluded that 42 Pa.C.S.A. § 9799.24(e)(3) is unconstitutional, and directed that trial courts apply only the applicable tier-based registration period, as those periods apply based on the conviction itself, and not upon facts not found by the fact-finder. **Butler**, 173 A.3d at 1218.

---

[4] This Court denied reargument in **Butler** on January 3, 2018. The Commonwealth has filed a petition for allowance of appeal to the Pennsylvania Supreme Court.

4

The General Assembly subsequently responded to the *Muniz* decision by amending SORNA. *See* Act of Feb. 21 2018, P.L. 27, No. 10 ("Act 10"). Act 10 amended several existing provisions of SORNA, and also added several new sections found at 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania recently signed new legislation striking the Act 10 amendments and reenacting new SORNA provisions, effective June 12, 2018. *See* Act of June 12, 2018, P.L. 1952, No. 29.

In its Opinion, the trial court agreed that Maneval's judgment of sentence should be vacated; his classification as an SVP reversed; and the case remanded for resentencing. *See* Trial Court Opinion, 12/5/17, at 4. We agree. In light of this Court's decision in *Butler*, we vacate Maneval's judgment of sentence, vacate his designation as an SVP, and remand for resentencing. However, we decline to address Maneval's challenge to the legality of resentencing him under Act 10 and its subsequent revisions. Because Maneval was not sentenced under Act 10 or its recent revisions, any ruling on its constitutionality in the instant appeal would be premature.

Maneval next claims that the trial court abused its discretion when it sentenced him to a prison term of 48 months to 120 months for aggravated indecent assault. Brief for Appellant at 11. Maneval's claim implicates the discretionary aspects of his sentence. Such a claim does not entitle an appellant to review as a matter of right. *Commonwealth v. Swope*, 123

A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*, quoting *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Maneval filed a post-sentence Motion raising his sentencing claim, followed by a timely Notice of Appeal to this Court. He has also included in his brief a Concise Statement of reasons relied upon for allowance of appeal, in accordance with Pa.R.A.P. 2119(f). We therefore next determine whether Maneval has raised a substantial question that his sentence is not appropriate under the Sentencing Code.

Maneval acknowledges that he was initially charged with seven counts related to his sexual abuse of his adoptive daughter, while she was between the ages of seven and eleven. Brief for Appellant at 7. Maneval states that the facts, "accepted by the judge on the date of the guilty plea, showed that [Maneval], on at least one occasion, over a roughly four[-]year[-]period, did

digitally penetrate the vagina of his adopted daughter[,] while she was between the ages of seven and eleven." ***Id.*** Maneval acknowledges that although there were estimated to be between fourteen and seventeen incidents, he pled guilty to only one count of aggravated indecent assault. ***Id.*** However, Maneval claims that the sentence is excessive in light of the mitigating evidence, including testimony that his likelihood of re-offense was minimal, and that he was remorseful and accepted responsibility for his actions. ***Id.*** at 8.

This Court has concluded that a substantial question was presented by an excessiveness claim combined with allegations that the trial court failed to consider mitigating factors. ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014). Accordingly, we will review the merits of Maneval's claim.

Our standard of review of the discretionary aspects of a sentence is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted).

7

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

*Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014).

Maneval argues that his minimum sentence of 48 months is at the top end of the aggravated guidelines range, and his maximum sentence of 120 months is the statutory maximum penalty for the offense. Brief for Appellant at 12. Maneval contends that a sentence in the standard range of the guidelines is more appropriate. *Id.* at 13. In support, Maneval directs our attention to testimony by the Sexual Offenders Assessment Board representative, Townsend Velkoff, that offenders in Maneval's age group (63 years old) pose a diminished risk for re-offense. *Id.* (citing N.T., 9/13/17, at 19-20). Maneval further directs our attention to the testimony of Dr. Scott Scotilla, who confirmed that individuals similarly situated to Maneval pose a diminished risk of re-offense. *Id.* at 13.

Maneval also argues that, considering the gravity of the offense and the risk to the community, a sentence at the middle to upper end of the standard range is more appropriate. *Id.* According to Maneval, it was unreasonable for the trial court to consider the number of times that the conduct occurred over the four-year time span as a factor in imposing an aggravated-range sentence. *Id.* Finally, Maneval contends his "history, characteristic, and

8

rehabilitative needs … supports a middle of the *standard* range sentence." ***Id.*** at 14 (emphasis in original).

In its Opinion, the trial court addressed Maneval's claim and concluded that it lacks merit. ***See*** Trial Court Opinion, 12/5/17, at 4-7. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis as to Maneval's second claim. ***See id.***

Judgment of sentence vacated. Case remanded with instructions. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/31/2018

Circulated 07/30/2018 12:59 PM

M. Weluckourtah

PP

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH : No. CP-41-CR-815-2016
:
:
:
MELVIN MANEVAL, :
            Appellant : 1925(a) Opinion

2017 DEC -5 PM 2: 04 SUZANNE M. FEDELE PROTHONOTARY & CLERK OF COURTS FILED LYCOMING COUNTY

### OPINION IN SUPPORT OF ORDER
### IN COMPLIANCE WITH RULE 1925 (a) OF
### THE RULES OF APPELLATE PROCEDURE

By Order dated September 13, 2017, following a hearing, the court found that the Commonwealth proved by clear and convincing evidence that Appellant, who was convicted of an aggravated indecent assault, a felony of the second degree, met the criteria to be classified as a sexually violent predator (SVP).

By Order dated September 13, 2017, again following a hearing, the court sentenced Appellant to a term of incarceration in a state correctional institution, the minimum of which was four years and the maximum of which was ten years. Appellant filed a timely motion for sentence reconsideration, which the court summarily denied on October 1, 2017. On October 12, 2017, Appellant filed a notice of appeal. In response to the court's directive that Appellant file a concise statement of matters complained of on appeal, Appellant filed said concise statement on November 2, 2017.

Appellant raises two issues in his concise statement. First, Appellant avers that the sentencing court abused its discretion by sentencing him to a sentence "that was at the very top of the aggravated range." Second, Appellant argues that in light of the Superior Court's decision in *Commonwealth v. Butler*, 2017 PA Super 344, 2107 Pa. Super. LEXIS

1

873 (October 31, 2017), the court's determination that Appellant was an SVP "was in error."

The court will first address defendant's *Butler* argument. Subsequent to the court's September 13, 2017 Order finding that Appellant met the criteria to be designated an SVP, the Superior Court issued its Opinion in *Butler.* The Superior Court specifically held that the portion of the Sexual Offender Registration and Notification Act (SORNA) for designating a convicted defendant as a sexually violent predator, 42 Pa. C.S.A. § 9799.24 (e) (3), violates the federal and state constitutions.

The court reasoned that in accordance with the Supreme Court's decision in *Commonwealth Muniz,* 164 A.3d 1189 (Pa. 2017), SORNA registration requirements are deemed to be punitive and part of the criminal punishment imposed upon a convicted defendant. Because SORNA's increased registration requirements constitute punishment under the federal and/or state constitutions, retroactive application of SORNA's registration requirements violates the federal and/or state constitutions. *Muniz*, at 1208. "Thus, as our Supreme Court has stated, if registration requirements are punishment, then the facts leading to registration requirements need to be found by the fact-finder chosen by the defendant, be it a judge or jury, beyond a reasonable doubt." *Butler*, at *10 (citations omitted).

The court concluded that the Supreme Court's holding in *Muniz* that registration requirements under SORNA constitute a form of punishment was dispositive to the issue in *Butler*, which is similar to that raised by the appellant in this case.

> [S]ince our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under *Apprendi* [*v. New Jersey,* 530 U.S. 466 (2000)] and *Alleyne* [ *v. United States,* 133 S. Ct. 2151 (2013)], a factual finding, such as whether the defendant has a 'mental abnormality or personality disorder

2

that makes [him or her] likely to engage in predatory sexual violent offenses[,]' 42 Pa. C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen factfinder.

*Butler,* at *11-12.

Thus, the Superior Court concluded that the SORNA statutory criminal scheme for designating and proving a convicted defendant as a sexually violent predator "cannot withstand constitutional scrutiny." *Butler,* at *12. The court concluded that "trial courts may no longer designate a convicted defendant as an SVP, nor may they hold SVP hearings, until our General Assembly enacts a constitutional designation mechanism." *Butler,* at *12.

Defendant did not raise this issue prior to, during or following his sentencing or SVP hearing. Defendant raised this issue for the first time on appeal. Generally, issues not raised before the trial court are waived for appellate purposes. Pa.R.A.P. 302 (a). However and as clearly set forth in *Butler,* these general principles are not applicable to illegal sentences, which may be addressed on direct appeal without proper preservation of the issue in the lower court.

*Butler,* though, might not ultimately apply in this case. First, a petition for reargument or reconsideration was filed in the *Butler* case on November 13, 2017, and remains pending. Second, the SVP designation in this case did not increase the length of Appellant's registration period. Appellant was convicted of aggravated indecent assault, which is a Tier III offense. 42 Pa.C.S.A. §9799.14(d)(7). An individual convicted of a Tier III offense must register quarterly for life. 42 Pa.C.S.A. §9799.15(a)(3), (e). An SVP also

3

must register quarterly for life. 42 Pa.C.S.A. §9799.15(d), (f). Therefore, unlike Butler who, absent the SVP designation, would have only been required to register for 15 years as a Tier I offender convicted of corruption of minors, Appellant is required to register quarterly for life regardless of the SVP designation.

Nevertheless, the court acknowledges the broad holding in *Butler* that courts may not designate a convicted defendant as an SVP until the General Assembly creates a constitutional designation mechanism, and it anticipates that the Order designating Appellant as an SVP and directing him to comply with the SORNA requirements because of such designation will be reversed and the case will be remanded in order that Appellant be re-sentenced consistent with those SORNA provisions that do not apply to an SVP.

The second issue asserted by Appellant is his claim that the court abused its discretion in imposing a sentence at the top of the aggravated range.

More specifically, the issue is not whether the court abused its discretion, but rather if the court exhibited a manifest abuse of discretion. *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012). A manifest abuse of discretion "is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 961 (2007).

Appellant argues that "sufficient evidence was present at sentencing that dispelled some of the reasoning the court cited in justifying its aggravated range sentence, namely any perceived lack of remorse that the defendant had for his crimes." This statement in and of itself fails to even allege a basis for finding a manifest abuse of discretion.

4

In imposing a sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa. C.S.A. § 9721 (b). The court objectively weighed these considerations and imposed a sentence it decided was appropriate under all of the circumstances. The sentence was consistent with the protection of the public and reflected the substantial impact of the crime on the community and the victim. While the court considered Appellant's remorse, it found it to be somewhat lacking and found the other interests to be far more compelling.

As the court specifically noted in its sentencing order, it was aware that the sentence was an aggravated range sentence. In supporting such it noted as follows:

> "This was not a single act; it occurred over a series of years on a number of different occasions; the [c]ourt is of the opinion that [Appellant] does not fully accept the responsibility; the [c]ourt is of the opinion that [Appellant's] remorse is somewhat lacking; but most importantly and perhaps determinatively, this conduct was perpetrated on a young innocent child who was particularly vulnerable being a member of the family and there was a significant breach of trust." (Sentencing Order, pp. 1-2).

These conclusions are supported by the record. Although Appellant only pled guilty to one count of aggravated indecent assault, he acknowledged at his guilty plea hearing that the conduct occurred 14-15 times when the child was between seven and eleven years old. Guilty Plea Transcript, December 2, 2016, at 8-9. Furthermore, the court did not indicate that Appellant completely lacked remorse. Instead, the court found that Appellant did not fully accept responsibility and his remorse was somewhat lacking. The court expressed this opinion because Appellant made statements where he was rationalizing or

5

minimizing his culpability. For example, Appellant made statements, which were referenced in the Pre-Sentence Investigation report (PSI) that the victim initiated the contact by sitting on his lap and squirming around, which resulted in him becoming aroused. Sentencing Transcript, September 13, 2017 at 52-53. In one of the reports, Appellant indicated that he never penetrated the victim. Sentencing Transcript, at 53. At his guilty plea and in his sentencing hearing, Appellant also was making distinctions concerning the amount of penetration. Guilty Plea Transcript, December 2, 2016, at 9;[1] Sentencing Transcript, September 13, 2017, at 58-59.[2] Finally, the impact on the victim was profound. She explained how much the abuse hurt, how she was afraid that if she told anyone she would not have a family anymore, and how the events negatively affected her self-esteem. Sentencing

---

[1] The following exchange took place during the guilty plea hearing:
THE COURT: And during this time period did you engage in digital penetration of her vagina?
[DEFENSE COUNSEL]: Your Honor, I believe that he would agree that he had a skin-to-skin contact with the victim and that he did touch her vaginal area, and that during these occasions he told police at least 14 to 15 – his fingertips penetrated her vagina. I believe he'd be willing to agree to that.
THE COURT: Do you agree to that?
[APPELLANT]: Yes.
[2] The following exchange occurred at the sentencing hearing:
THE COURT: ...any changes, modifications, additions to the Pre-Sentence report?
[DEFENSE COUNSEL]: Just commentary, your Honor, with regard to the penetration questions which the [c]ourt has raised. I think there's some issue with the however slight matter, what occurred at the allocution in conjunction with Mr. Maneval maybe not necessarily expressing himself correctly, and that also goes to some of the issues that the writer of the PSI had had.
THE COURT: Well, let me just stop you. If he's not admitting that there was penetration then we're done. I'm vacating the guilty plea and we're going to trial.
[DEFENSE COUNSEL]: I think with regard to however slight. I think it was a different understanding of penetration.
THE COURT: Well, what did he mean when he said penetration? Penetration kind of means penetration. It goes through or in the opening, past the outside.
[DEFENSE COUNSEL]: However slight.
THE COURT: That's how I would think it – that's how I would interpret it.
[DEFENSE COUNSEL]: Yes.
THE COURT: However slight. All right, you can—we can talk about it, um, all we want. I understand. And, you know, without getting entirely too graphic here, there's different types of penetration. I understand that.
[DEFENSE COUNSEL]: Yes, and I think that was the issue and we have no desire to withdraw or –
THE COURT: Okay.
[DEFENSE COUNSEL]: Would ask the [c]ourt not to pursue that route.

6

Transcript, September 13, 2017, at 60-63.

Under all of the circumstances, the court's decision with respect to the sentence was just, fair and appropriate. Appellant and his interests were not the only considerations at sentencing. In simplistic but concise terms, crimes hurt people and society. Appellant's crime changed a young woman's life forever and had a permanent impact on the community.

Date: _____12-5-17_____                    By The Court,

                                           _____
                                           Marc F. Lovecchio, Judge


cc:     Ken Osokow, Esquire (ADA)
        Matthew Welickovitch, Esquire (APD)
        Work File
        Gary Weber, Lycoming Reporter
         Superior Court (original and 1)

7